**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

LEONARD GREEN
CLERK

DIANE SCHNUR
(513) 564-7037
(FAX) 564-7094
www.ca6.uscourts.gov

Filed: November 14, 2006

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN

NOV 16 2006

DEPUTY CLERK

Ann Buntin Steiner
Steiner & Steiner
214 Second Avenue, N.
Suite 203
Nashville, TN 37201-1644

Francis H. Young
Metropolitan Department of Law
222 Third Avenue, N.
Room 501 Metropolitan Courthouse
Nashville, TN 37201

RE: 05-5258
Crawford vs. Metro Govt
District Court No. 03-00996

Enclosed is a copy of an order which was entered today in the above-styled case.

Very truly yours,
Leonard Green, Clerk

Diane Schnur
Case Manager

Enclosure

cc:

Honorable Todd J. Campbell
Mr. Keith Throckmorton

INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 03-00996

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| VICKY S. CRAWFORD, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | On Appeal from the United States |
| ) | District Court for the Middle |
| METROPOLITAN GOVERNMENT OF ) | District of Tennessee |
| NASHVILLE AND DAVIDSON COUNTY, ) | |
| TENNESSEE, ) | |
| ) | |
| Defendant-Appellee, ) | |
| ) | |
| GENE HUGHES, DR.; PEDRO GARCIA, DR ) | |
| ) | |
| Defendants | |

**Before:** **BOGGS, Chief Judge; DAUGHTREY, Circuit Judge; MILLS, District Judge.**[*]

**PER CURIAM.** Vicky S Crawford, a former employee of the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"), appeals the district court's grant of summary judgment against her claims for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Because we find that there is no genuine issue of material fact and that Metro is entitled to judgment as a matter of law, we affirm the grant of summary judgment

---

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

No. 05-5258
Crawford v. Metro. Gov't of Nashville and Davidson County, Tennessee

# I

As this case is before us on an appeal of a grant of summary judgment, we state the facts in the light most favorable to the plaintiff. *See Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

Vicky Crawford had worked for Metro for thirty years before being fired in November of 2002. Crawford alleges that the situation that led to her firing arose in the fall of 2001, when Metro hired Dr. Gene Hughes as the employee relations director for the Metro School District. As employee relations director, Hughes was responsible for, *inter alia*, investigating complaints of discrimination. In May 2002, an attorney for the Metro Legal Department contacted the Human Resources Department after Jennifer Bozeman, an attorney with Metro Legal, learned from another Metro employee that there were several employees within the administrative offices that had expressed concern about specific incidents of inappropriate behavior by Hughes. Because Hughes would normally have been responsible for investigating complaints of sexual harassment, this complaint was instead brought to the attention of Dr. Pedro Garcia, the director of schools. Metro then assigned Veronica Frazier, the assistant director of human resources, to investigate the complaint. In carrying out the investigation, Frazier contacted employees who worked with Hughes in the Metro administrative offices and asked them to come to her office so that she could interview them. One of the employees so approached was Crawford.

In July 2002, Crawford went to the legal department as requested and Frazier questioned her about Hughes. Crawford told the investigators that Hughes had sexually harassed her and other

- 2 -

Case 3:03-cv-00996  Document 85  Filed 11/16/2006  Page 4 of 10

No. 05-5258
Crawford v. Metro Gov't of Nashville and Davidson County, Tennessee

employees.[1] According to Crawford, she believed that she was exercising her rights under federal law when she informed Frazier of Hughes's actions. Frazier's investigation concluded that Hughes had engaged in inappropriate and unprofessional behavior, though not to the extent of Crawford's allegations. It appears that no disciplinary actions was taken against Hughes; the investigators did recommend training and education for the staff.

According to Crawford, during the investigation, three employees made statements that Hughes had engaged in sexually inappropriate conduct, and after the sexual harassment investigation, these three employees were immediately investigated on other grounds and all promptly discharged. Crawford herself was terminated in January 2003 after having been accused of embezzlement and drug use, charges which she states were "ultimately found to be unfounded." In June 2003, Crawford filed a charge of discrimination with the EEOC alleging retaliation, and after receiving her notice of right to sue, she brought this suit.

## II

We review a district court's grant of summary judgment *de novo*, using the same Rule 56(c) standard as the district court. *Hansard v. Barrett*, 980 F.2d 1059, 1061 (6th Cir. 1992). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[1] Specifically, Crawford stated that Hughes "had asked to see her titties on numerous occasions," that she would say "Hey Dr. Hughes, What's up?" and he would "grab his crotch and state 'you know what's up,'" that he would "approach her window and put his crotch up to the window and ask to see her titties all at the same time," and that one time, "Hughes came into her office and she asked him what she could do for him and he grabbed her head and pulled it to his crotch." Br. of Appellant at 7. See also JA 44-45.

-3-

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Ibid.*; *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter [("the opposition clause")], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [("the participation clause")]." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of unlawful retaliation under Title VII, Crawford must demonstrate by a preponderance of the evidence that: "(1) [she] engaged in activity that Title VII protects; (2) defendant knew that [she] engaged in this protected activity; (3) the defendant subsequently took an employment action adverse to the plaintiff; (4) a causal connection between the protected activity and the adverse employment action exists." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). Upon appeal, Crawford claims that her actions during the internal investigation constitute both *opposition* to a practice made unlawful by Title VII and *participation* in an investigation under Title VII, and that she therefore engaged in activity that Title VII protects. As did the district court, we hold that precedent compels a contrary conclusion.

First, Crawford's actions do not constitute opposition under the meaning of the opposition

clause. We have enumerated the types of activities that constitute opposition under Title VII: "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer – e.g., former employers, union, and co-workers." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). The general idea is that Title VII "demands active, consistent 'opposing' activities to warrant ... protection against retaliation." *Bell v. Safety Grooving and Grinding, LP*, 107 F. App'x 607, 610 (6th Cir. 2004).

Crawford's actions consisted of cooperating with Metro's investigation into Hughes by appearing for questioning at the request of Frazier and, in response to Frazier's questions, relating unfavorable information about Hughes. Crawford does not claim to have instigated or initiated any complaint prior to her participation in the investigation, nor did she take any further action following the investigation and prior to her firing. This is not the kind of overt opposition that we have held is required for protection under Title VII.

Second, Crawford's participation in an internal investigation initiated by Metro in the absence of any pending EEOC charge is not a protected activity under the participation clause. We have held that "Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge." *Abbott*, 348 F.3d at 543. In Crawford's case, however, no EEOC charge had been filed at the time of the investigation or prior to her firing; the investigation was internal and was prompted by an informal internal statement. Courts have generally held that the participation clause

No. 05-5258
Crawford v. Metro. Gov't of Nashville and Davidson County, Tennessee

does not protect "an employee's participation 'in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC'; at a minimum, an employee must have filed a charge with the EEOC or otherwise instigated proceedings under Title VII." *Ibid.* (quoting *EEOC v. Total Sys. Serv., Inc*, 221 F.3d 1171, 1174 n.2 (11th Cir. 2000)); *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999); *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990); *Goldberg v. Media General, Inc.*, 2003 WL 21920923 at *3 (E.D. Tenn. June 18, 2003).

Crawford argues that we should break from the general trend requiring a formal EEOC charge to have been filed or the machinery of Title VII otherwise invoked before the participation clause takes effect. Crawford points to the Supreme Court's decision in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), which created an affirmative defense against an employer's vicarious liability for sexual harassment by its employees when: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 805-07. Crawford hypothesizes that after *Faragher*, an employer could implement formal sexual harassment policies and reporting requirements, investigate complaints made to management, and then such investigations would serve as an affirmative defense to vicarious liability arising out of claims of sexual harassment. She then argues that if the participation clause does not protect participation in internal investigations made in the absence of an EEOC charge, employees called in such investigations will know that they may be fired if they testify negatively, and will stay silent. She concludes that employers, lacking corroborating witnesses, will not take action to remedy sexual harassment, while being

- 6 -

simultaneously shielded from vicarious liability by the *Faragher* affirmative defense.

As an initial matter, this foreboding scenario is predicated upon a lax reading of *Faragher*. In order to be entitled to an affirmative defense, an employer must exercise "reasonable care." *Ibid*. Certainly, a policy or practice of firing a person who testified negatively during an investigation into complaints of sexual harassment would not be "reasonable." Courts have held that an anti-harassment policy designed to deter sexual harassment can help an employer meet its burden as to the first element of the *Faragher* test only if the policy is "both reasonably designed and reasonably effectual" and not administered "in bad faith." *See, e.g., Brown v. Perry*, 184 F.3d 388, 396 (4th Cir. 1999). A policy of firing any witness that testified negatively during an internal investigation would certainly constitute bad faith; even an instance of an allegedly unjustified firing would put the *Faragher* defense at risk.

This court has stated that the purpose of Title VII's participation clause "is to protect access to the machinery available to seek redress for civil rights violations and to protect the operation of that machinery once it has been engaged. Accordingly, any activity by the employee prior to the instigation of statutory proceedings is to be considered pursuant to the opposition clause." *Booker v. Brown and Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989). The impact of Title VII on an employer can be onerous. By protecting only participation in investigations that occur relative to EEOC proceedings, the participation clause prevents the burden of Title VII from falling on an employer who proactively chooses to launch an internal investigation. Expanding the purview of the participation clause to cover such investigations would simultaneously discourage them. We will not alter this limit delineated by the language of Title VII and recognized by this

court and others.

## IV

Accordingly, for the reasons set out above, we AFFIRM the district court's grant of summary judgment.