IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

VICKY S. CRAWFORD )
)
v. ) NO. 3:03-0996
) JUDGE CAMPBELL
THE METROPOLITAN GOVERNMENT )
OF NASHVILLE/DAVIDSON COUNTY, )
TENNESSEE )

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 103). For the reasons stated herein, Defendant's Motion is DENIED.

## FACTS

Plaintiff's remaining claim in this action is that Defendant retaliated against her, in violation of federal law, for exercising her rights to protected activity, specifically for participating in an internal investigation of sexual harassment.[1]

Plaintiff was an employee of the Metropolitan Government of Nashville/Davidson County ("Metro"), working, at all relevant times herein, as a Payroll Coordinator. Plaintiff asserts that, in the fall of 2002, a potential sexual harassment complaint arose against Dr. Gene Hughes, then Director of Employee Relations for the Metro Public School System. Plaintiff contends that, in the course of the internal investigation of the complaint against Dr. Hughes, Metro officials questioned Plaintiff concerning her knowledge of any inappropriate physical conduct or behavior by Dr. Hughes. Plaintiff claims that she informed the investigators of highly inappropriate words and actions by Dr. Hughes.

---

[1] The case is before this Court on remand from the United States Supreme Court and the Court of Appeals for the Sixth Circuit. Docket No. 92.

Plaintiff alleges that, in retaliation for her cooperation and participation in the investigation of Dr. Hughes, Defendant suspended and ultimately terminated her from her job. Plaintiff asserts that she was fired in retaliation for exercising protective rights, in violation of Title VII.

Defendant argues that Plaintiff cannot establish that the decision-maker, the person who suspended and ultimately fired her, knew about her protected activity before he made those decisions. Defendant also contends that Plaintiff cannot show a causal connection between her protected activity and the decisions to suspend and fire her. Finally, Defendant maintains that, even if she could establish these facts, Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reasons for its actions were pretextual.

## SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). In order to defeat a summary judgment motion, the nonmoving party must provide more than a scintilla of evidence; that is, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Van Gorder*, 509 F.3d at 268. Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's cases, and on which that party will bear the burden of proof at trial. *Id.*

RETALIATION

To establish a claim of unlawful retaliation, Plaintiff must demonstrate that (1) she engaged in activity protected by Title VII;[2] (2) Defendant knew that she engaged in that protected activity; (3) Defendant took an employment action against her which a reasonable employee would have found to be materially adverse; and (4) a causal connection existed between the protected activity and the adverse employment action. *Ellsworth v. Pot Luck Enterprises, Inc.*, 624 F.Supp.2d 868, 881 (M.D. Tenn. 2009); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006).

If Plaintiff establishes this *prima facie* case, then the burden shifts to Defendant to produce evidence of a legitimate, nondiscriminatory reason for its actions. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). If Defendant satisfies this burden, then Plaintiff must demonstrate by a preponderance of the evidence that the legitimate reason offered by Defendant was not its true reason, but instead was a pretext designed to mask retaliation. *Id*.

The Court finds that there are genuine issues of material fact as to whether Plaintiff can establish a *prima facie* case of retaliation.

Defendant first argues that Plaintiff cannot show that the decision-maker, Chris Henson, who was the person who suspended and fired her, knew about her protected activity before he made those decisions. Plaintiff offers evidence, however, that Mr. Henson knew, at the time of the hearing concerning disciplinary action against the Plaintiff, that Plaintiff had testified against Dr. Hughes and that Plaintiff was claiming the charges against her were "trumped up" in retaliation for that

---

[2] The U.S. Supreme Court held, in this case, that speaking out about discrimination, not on one's own initiative, but in answer to questions during an employer's internal investigation, is "protected activity." *Crawford v. Metropolitan Govt. of Nashville and Davidson County*, 129 S.Ct. 846 (2009).

testimony. Docket No. 122, ¶ 19. Mr. Henson's December 4, 2002 letter to Plaintiff makes clear that no decision would be made on disciplinary action until *after* that December 11, 2002 hearing. Docket No. 118-22, p. 3. Therefore, there is evidence before the Court that the decision to terminate Plaintiff's employment was not made until after Mr. Henson was advised of Plaintiff's protected activity.

A plaintiff may survive summary judgment by producing circumstantial evidence to establish that the decision-makers were aware of her protected activity. *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002). Whether, when and to what extent Mr. Henson was aware of Plaintiff's protected activity is a question of fact which must be determined by a jury.[3]

Defendant also contends that Plaintiff cannot show a causal connection between her protected activity and the adverse employment action against her. Plaintiff first asserts that temporal proximity shows the causal connection here. Plaintiff argues that on July 22, 2002, Plaintiff told Defendant that Dr. Hughes sexually harassed her and other employees, and by September 13, 2002, Plaintiff was being investigated. Plaintiff has also submitted evidence that, on the same date of the fact-finding report which cleared Dr. Hughes, September 13, 2002, Defendant began its investigation of Plaintiff, at the instigation of Dr. Hughes. Docket Nos.118-11 and 118-27.

Although temporal proximity alone rarely is sufficient to establish a causal connection, *Lahar v. Oakland County*, 2008 WL 5102411 at * 4 (6th Cir. Dec. 4, 2008), where an adverse employment action occurs very close in time after an employer learns of protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal

---

[3] Plaintiff also avers that Director Garcia was aware of her protected activity at the time he upheld the decision to terminate her employment.

4

connection for the purposes of satisfying a *prima facie* case of retaliation. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Plaintiff also argues that a causal connection is shown because she had good performance evaluations throughout the course of her employment with Defendant, including a rating of outstanding overall performance just prior to her protected activity. Yet, following the protected activity, Defendant began to accuse Plaintiff of misconduct and began an investigation of her.

Finally, Plaintiff contends that the causal connection is evidenced by the fact that the three individuals who gave statements against Dr. Hughes were all investigated and then discharged.

Based upon all these factors, the Court finds that there are genuine issues of material fact concerning the causal connection element of Plaintiff's *prima facie* case.

Defendant also contends that, even if Plaintiff could establish a *prima facie* case, she cannot show that Defendant's legitimate, nondiscriminatory reason for firing her - - - because she wholly failed to perform her duties as Payroll Coordinator - - - was pretextual. Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action. *Chen v. Dow Chemical Co.*, ____ F.3d ____, 2009 WL 2851351 at * 5 (6th Cir. Sept. 8, 2009). To carry her burden in opposing summary judgment, Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendant's explanation of why it fired her. *Id.*

Defendant has asserted that when the Board of Education began to receive concerns, including allegations of operational irregularities, about the payroll division, Defendant decided to hire a "forensics person" to investigate the payroll division. Plaintiff asserts that all complaints

5

about the payroll division came from Dr. Hughes, in retaliation for Plaintiff's testimony against him. Plaintiff asserts that the reason her department was investigated in the first place was because of Dr. Hughes and that the investigation was invalid from the start.[4]

Ms. McDoniel, who was the audit manager for Defendant, testified that she understood all the allegations of fraud or misappropriation of funds in the payroll division were coming from Mr. Hughes. Docket No. 118-8, p. 22. She stated that the investigation did not begin until after Mr. Hughes accused Plaintiff of misappropriation of funds. *Id*., p. 24.

Mr. Sullivan, the auditor, testified that there were significant problems in the payroll department, including disorganization, no written policies or procedures, no direct supervision of employees and no one guiding efforts to make the department more efficient. Docket No. 106-7, p. 207. Again, Plaintiff asserts that the payroll concerns Mr. Sullivan was asked to investigate came from Dr. Hughes, who made allegations specifically and solely against the three women who complained about Dr. Hughes' conduct.[5] Defendant argues it had complaints from numerous other people.

Whether the concerns, complaints, investigation and findings were all a result of retaliation by Dr. Hughes against Plaintiff or otherwise constituted retaliation involves genuine issues of material fact, which cannot be decided on summary judgment.

---

[4] Mr. Hughes testified that he received several phone calls from employees complaining about the payroll division. Docket No. 118-7, p. 122. He testified that he wrote down the complaints and passed them on to the auditors who were in the building. *Id*., p. 123. He stated that the complaints were primarily against Plaintiff. *Id*.

[5] Plaintiff contends that the three individuals who told Defendant about Mr. Hughes' inappropriate conduct were immediately investigated and then discharged.

6

Defendant also asserts that, even if the allegations against Plaintiff were untrue, it had an "honest belief" that was sufficient to justify Plaintiff's firing. Defendant maintains that whether or not the initial complaints came from Mr. Hughes, the subsequent investigation by KPMG confirmed the serious problems in the payroll division and specific serious problems with Plaintiff's performance.

Plaintiff vigorously disagrees with the alleged facts uncovered by the KPMG investigation. *See* Docket No. 123, ¶ 23.[6] Simple disagreement with the facts underlying her termination does not defeat summary judgment, however, so long as Defendant had an honest belief in its proffered nondiscriminatory reason. *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007). The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. *Id*. at 598-99.

The Court finds that the totality of these circumstances preclude a finding that, as a matter of law, Defendant had an honest belief in its proffered nondiscriminatory reason. Plaintiff has disputed the basis in fact of the proffered reason (*see., e.g.*, Docket No. 123, ¶ 23, referenced above), has disputed that the proffered reason actually motivated Defendant's action (questioning the timing, source and targets of the investigation), and has argued that the proffered reasons were insufficient to motivate her firing absent a retaliatory motive.

Because there are genuine issues of material fact as to pretext, summary judgment cannot be granted on this issue.

---

[6] Defendant's assertion, Plaintiff's Response, and Defendant's rebuttal to this alleged statement of fact take up 17 pages of this document, further evidence of disputed issues of fact as to the veracity of the auditor's conclusions. *See* Docket No. 123, pp. 21-27.

7

CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 103) is DENIED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

8